724 S.E.2d 758

**STATE of West Virginia, Petitioner**

v.

**Timothy J. JUDGE, Respondent.**

**No. 11–0089.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 2012.

Decided March 22, 2012.

---

D. Luke Furbee, Prosecuting Attorney, Middlebourne, WV, for Petitioner.

Lori M. Peters Public Defender Corporation, Charleston, WV, for Respondent.

McHUGH, Justice:

The State of West Virginia appeals from the December 27, 2010, order of the Circuit Court of Tyler County granting Respondent Timothy J. Judge's motion to dismiss an indictment that charged him with failure to register as a sex offender.[1]  In dismissing the indictment, the trial court concluded that Mr. Judge did not violate the West Virginia Sex Offender Registration Act ("Registration Act" or the "Act")[2] by failing to re-register as a sex offender after a one-night period of confinement in jail for an unrelated charge. The State advocates that each and every dismissal from a penal institution, regardless of the nature of the offense or the length of confinement or incarceration, requires a sex offender to initiate the registration process required by the Act. Having carefully examined the statutes at issue in conjunction with the record of this case, we conclude that the trial court did not commit error and, accordingly, affirm the dismissal of the indictment.

## I.  Factual and Procedural Background

Pursuant to a plea agreement, Mr. Judge was convicted on September 19, 2002, of the offense of sexual abuse in the third degree. His ninety-day jail sentence was suspended in lieu of eighteen months of probation.  Because the victim of the crime was a minor, Mr. Judge is required to register for life as a sex offender.[3]  In compliance with the Act's dictates, Mr. Judge regularly provided the state police with details about his residence, his employment and other pertinent information.[4]  On April 15, 2010, just weeks before the events under discussion, Mr. Judge had updated his registry data.

On May 7, 2010, Mr. Judge was incarcerated at the North Central Regional Jail on unrelated charges and then released the following day.  Upon his release, Mr. Judge returned to his previously-registered place of residence.

Because Mr. Judge did not complete a new sex offender registration form within three business days after his release from jail, the State took the position that he had violated the Registration Act. See W.Va.Code § 15–12–2(e)(1).  Under the subject indictment, Mr. Judge was charged with committing the felony offense of failure to register as a sex offender in violation of West Virginia Code §§ 15–12–8 and –2(e)(1) on or about May 13, 2010.

Asserting that the lack of any change in his registry data negated the need to re-register as a sex offender, Mr. Judge filed a motion to dismiss the indictment.  Following oral argument on this issue, the trial court dismissed the indictment by order entered on December 27, 2010.  Through this appeal,

---

1.  See W.Va.Code § 15–12–8(c) (2009).

2.  See W.Va.Code §§ 15–12–1 to –10 (2009 & Supp.2011).

3.  See W.Va.Code § 15–12–4(a)(2)(E).

4.  He either provided this information to the state police annually, as required by the Act, or contemporaneously, as in the case of a change of residence or employment.

the State challenges the trial court's dismissal of the indictment.

## II. Standard of Review

■ Because we are asked to interpret the provisions of the Registration Act, our review in this case is plenary. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involv[es] an interpretation of a statute, we apply a *de novo* standard of review."). As we recognized in syllabus point one of *State v. Grimes,* 226 W.Va. 411, 701 S.E.2d 449 (2009), this Court typically accords *de novo* review to motions to dismiss an indictment. With these standards in mind, we proceed to determine whether the trial court committed error by dismissing the subject indictment.

## III. Discussion

As framed by the State, the only issue before us is whether Mr. Judge can be prosecuted for failing to re-register as a sex offender within three business days of his release from jail when there was no change in the information he had just recently provided to the state police. Focusing on Mr. Judge's jail confinement as the trigger, the State argues that this singular event served to make his previously valid registration ineffective.[5] While acknowledging that the offense at issue—failure to register or provide notice of registration changes—is set forth in subsection eight of the Registration Act, the State maintains that the elements of this offense must be gleaned by reading all of the provisions of the Act together.

■ We turn first to subsection eight, which defines the offense at issue. Under West Virginia Code § 15–12–8(c),

[a]ny person required to register for life pursuant to this article who knowingly provides materially false information or who refuses to provide accurate information when so required by the terms of this article, or *who knowingly fails to register or knowingly fails to provide a change in*

*any required information as required by this article,* is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than one year nor more than five years. Any person convicted of a second or subsequent offense under this subsection is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than ten nor more than twenty-five years.

*Id.* (emphasis supplied). As the statute makes clear, an individual subject to the Registration Act commits a felony when he or she provides materially false information; provides inaccurate information; knowingly fails to register; or knowingly fails to provide a change in required information. *See id.*

Because the offense at issue arises from either the failure to register or the failure to provide updated information for the sex offender registry, the State looks to those provisions of the Act that prescribe the registration requirements. To support its position that Mr. Judge was required to re-register within three business days of his release from the regional jail, the State cites language set forth in West Virginia Code § 15–12–2(e)(1). The last sentence of that subsection provides as follows: "Any person having a duty to register for a qualifying offense shall register upon conviction, unless that person is confined or incarcerated, in which case he or she shall register within three business days of release, transfer or other change in disposition status." *Id.*

While the State focuses on the three-day time period provided for sex offenders to register upon release from incarceration, Mr. Judge correctly observes that the statutory obligation to register is expressly linked to a *conviction*—not just an arrest. Both the trial court and Mr. Judge interpret subsection (e)(1) as tying the obligation to register to the conviction for the offense which statutorily invokes the offender's duty to comply with the Act. By statute, the provisions of the Act apply to those individuals who are either

---

**5.** The State agrees that Mr. Judge "was in all respects properly registered immediately prior to his incarceration in May of 2010."

"convicted or found not guilty by reason of mental illness, mental retardation or addiction" of any of the "qualifying offense[s]" listed in West Virginia Code § 15–12–2(b). *See id.* As the Registration Act makes clear, the duty to register as a sex offender arises upon a *conviction* of an offense that is set forth in subsection 2(b). *See* W.Va.Code § 15–12–2(b), (e)(1) (emphasis supplied).

Because individuals convicted of "qualifying offense[s]" are regularly incarcerated immediately following their convictions, the obligation to register as a sex offender is automatically stayed during the pendency of an ensuing period of incarceration. *See* W.Va.Code § 15–12–2(e)(1). Before a sex offender is released from incarceration, "the Commissioner of Corrections, regional jail administrator, city official or sheriff operating a jail or Secretary of the Department of Health and Human Resources" is statutorily charged with a duty to obtain all the information that is required by the Act.[6] *Id.* In addition to being obligated to provide this information to the state police within three business days, these same individuals are charged with the duty of informing the convicted sex offender of his or her individual duty to register with the state police within three business days of release from incarceration. *Id.* Relying on this statutory duty set forth in subsection (e)(1), the State posits that Mr. Judge had a duty to re-register with the state police following his one-night stay at the regional jail in May 2010.

A careful reading of subsection (e)(1) reveals that the entirety of this subsection, including the singular sentence upon which the State has aimed its focus, is tied to the "qualifying offense." W.Va.Code § 15–12–2(e)(1). Only upon being convicted of a "qualifying offense," does an offender become subject to the registration requirements set forth in the Act. The duty to register as a sex offender is immediate— "Any person having a duty to register for a qualifying offense *shall register upon conviction*." *Id.* (emphasis supplied). That duty to

register is expressly suspended by subsection (e)(1) during periods of incarceration or confinement. *See id.* When the period of incarceration or confinement ends, the convicted sex offender has three business days within which to register with the state police under the provisions of the Act. *See id.*

■ In this case, Mr. Judge's one night of confinement following an *arrest* for a non-qualifying offense failed to trigger the registration duty set forth in subsection (e)(1). *See* W.Va.Code § 15–12–2(e)(1). Not only is a conviction required as the precipitating event for the registration duty but the period of incarceration which tolls the duty to register must be in connection with a sex offender's sentence for a "qualifying offense." *Id.* This is clear from the statutory language that describes the time frame for registering as being an immediate obligation that arises concomitant with a conviction for a "qualifying offense," but then suspends that duty pending periods of incarceration or confinement. Because the Legislature was clear that only confinement or incarceration may serve to suspend the existing duty to register as a sex offender upon conviction, it stands to reason that the release from confinement or incarceration which serves to launch the three-business-day period for registration must specifically correlate to a "qualifying offense." *Id.* Accordingly, we conclude that the requirement provided in West Virginia Code § 15–12–2(e)(1) that a sex offender has to register with the state police within three business days of "release, transfer or other change in disposition status" is expressly connected to the offender's underlying conviction of a "qualifying offense" which is set forth in West Virginia Code § 15–12–2(b). As Mr. Judge's confinement in the regional jail was not in relation to a conviction for a "qualifying offense," his release from that penal institution did not invoke the registration duties under discussion. *See* W.Va.Code § 15–12–2(b), –(e)(1).

---

**6.** According to the record in this case, the regional jail director did not obtain information for the sex offender registry from Mr. Judge prior to his release on May 8, 2010. Neither did the regional jail director provide Mr. Judge with any informa-

tion regarding the registry. In explanation, Mr. Judge observes that neither of these actions were required by the jail director since the arrest did not involve an offense which invoked the Act's provisions.

The State suggests that the key to whether Mr. Judge was subject to the reporting requirements of the Act upon his release from jail is found in the provision of the Act which addresses the duration of a sex offender's obligation to register. In providing the length of time a sex offender is subject to the Act, the Legislature included the following language: "A person required to register under the terms of this article shall continue to comply with this section, *except during ensuing periods of incarceration or confinement, . . . .*" W.Va.Code § 15–12–4 (emphasis supplied). Since the reporting obligation is suspended during periods of incarceration or confinement, the State argues that an offender's registration coterminously ends when incarceration or confinement occurs. Under the logic employed by the State, it is as if the sex offender's previously registered data is automatically erased from the registry the minute he or she is subject to confinement or incarceration.

As part of its argument, the State observes that the state police currently apply and enforce the provisions of the Act consistent with the interpretation it advocates. Pursuant to procedural rule,[7] the state police utilize an annual verification "Notice" that informs sex offenders: "Your registration stops if you are incarcerated and you are required to re-register within 3 days of your release." This same duty to register within three days of release from an institution is set forth on a "Notification of Sex Offender Responsibility" form that sex offenders are required to complete as part of the registration process. The State acknowledges, however, that "there is an apparent gap or disconnect in the statutory language of § 15–12–2 and the State Police's rule and forms."

Under the Act, a sex offender is subject to the reporting provisions for either a ten-year period or for life, depending on the nature and severity of the offense. *See* W.Va.Code § 15–12–4. Since a confined or incarcerated sex offender cannot physically report to a state police detachment, the Legislature included language in section four of the Act which recognizes that, during periods of incarceration or confinement, the statutory reporting obligation is suspended. Contrary to the position advocated by the State, we find no basis for concluding that a sex offender's reporting obligations are "effectively stopped or terminated upon incarceration or commitment." Furthermore, we wholly reject the State's contention that upon release from a penal institution a previously registered sex offender is regarded as never having been subject to the registry.

In considering whether Mr. Judge had violated the Act by failing to re-register upon his release from jail, the trial court opined that section three, which concerns changes in registry information, better addressed the facts of this case than section four. Under section three of the Act, a sex offender is required to inform the state police detachment within ten business days of any change of residency, employment, school, or training facility. *See* W.Va.Code § 15–12–3. Examining the purpose of the Act, the trial court observed:

> Looking at Section 1 of the Code of this article, the intent of the legislature was to make sure that law enforcement and the public were aware of where persons who have previously been convicted of the appropriate offenses [are]; just to know where they live. Where they work at. Where they go to school at. . . . What they drive. What their e-mail addresses are, et cetera. And I don't think that's disrupted by this person not, or a person not, registering every single time they come out of an institution.

Since there were no changes to his previously reported registry data, the trial court reasoned that Mr. Judge had no obligation to return to the state police detachment to re-register the same information he had just reported several weeks prior to his arrest.

▇▇ We find the trial court's reasoning to be compelling. Under the provisions of the Act, a registered sex offender who is

---

7. According to 81 C.S.R. § 14–17.3, a person released from incarceration has three business days following his or her release to "physically appear at a State Police Detachment in the county of residence and supply information necessary to complete the registration process."

792

released from incarceration or confinement on an unrelated charge has a duty to return to the state police detachment to update the information on file only if there has been a change to any previously reported information or if sufficient time has passed to require an address verification as required by West Virginia Code § 15–12–10.[8] Because Mr. Judge was in compliance with the registration requirements of the Act, and because there was no change in any of his registry data, he was not required by the provisions of the Act to re-register with the state police following his release from jail. Because Mr. Judge did not commit the offense of failing to register or failing to provide updated information to the sex offender registry, the trial judge properly dismissed the indictment under discussion. *See* W.Va.Code § 15–12–8(c).

We fully recognize that the Legislature may decide to amend the Registration Act to require that a sex offender must undertake the registration process anew following each incarceration or confinement. Until such a change occurs, it will be necessary for the state police to amend their procedural rule, 81 C.S.R. § 14–17.3, to comport with the dictates of this opinion. Additionally, any and all forms the state police utilize in connection with the Act that include language instructing sex offenders of their obligation to re-register upon each release from incarceration should be rewritten to remove such language.

Based on the foregoing, the decision of the Circuit Court of Tyler County is affirmed.

Affirmed.

---

**8.** Under West Virginia Code § 15–12–10, sex offenders are required to report to the state police on an annual basis to verify their addresses; sexually violent predators are required to make this address verification four times a year.